NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3354

GARY A. HUNTER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Gary A. Hunter, of Tucson, Arizona, pro se.

Armando Rodriguez-Feo, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director.  Of counsel on the brief was Jessica S. Johnson, Attorney, Office of the General Counsel, Office of Personnel Management, of Washington, DC.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3354

GARY A. HUNTER,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Petition for review of the Merit Systems Protection Board in DE0845080073-I-1.

_____

DECIDED: January 27, 2009

_____

Before NEWMAN and MOORE, Circuit Judges, and GETTLEMAN, District Judge[*]

NEWMAN, Circuit Judge.

Gary A. Hunter, pro se, appeals aspects of the decision of the Merit Systems Protection Board affirming the amount of annuity overpayments made to him when he was erroneously placed in the Federal Employees' Retirement System, waiving recovery of those overpayments, and ordering the Office of Personnel Management (OPM) to return to Mr. Hunter repayments it had assessed and collected. Hunter v. Office of Pers. Mgmt., No.

---

[*]    The Honorable Robert W. Gettleman, United States District Court for the Northern District of Illinois, sitting by designation.

DE-0845-08-0073-I-1 (Merit Sys. Prot. Bd. Aug. 1, 2008). Mr. Hunter seeks an additional refund from OPM. We affirm the decision of the Board.

BACKGROUND

Mr. Hunter was employed by the Federal Highway Administration (FHWA), pursuant to a series of excepted temporary service positions, from June 17, 1970 through February 4, 1995. During that period his retirement benefits accrued under the Federal Insurance Contributions Act (FICA), part of the Social Security system. Mr. Hunter's appointment was converted to a term appointment on February 5, 1995, at which time FHWA erroneously placed Mr. Hunter in the Federal Employees' Retirement System (FERS). There is no dispute that he should have been placed in the Civil Service Retirement System (CSRS) Offset program, and that he should have been advised that he had the option of paying a service deposit into the CSRS retirement fund for his temporary service time and electing FERS retirement coverage within six months of his February 5, 1995 appointment. In accordance with FHWA's erroneous instructions, Mr. Hunter made retirement contributions to FERS after his position was converted in 1995. He was also advised, again in error, that he could retire on July 20, 2005, when he reached age 57; he did so, and began receiving a FERS annuity on December 1, 2005, with payments made retroactive to August 1, 2005.

On January 27, 2006, the OPM discovered the errors, which ran from 1995, and notified Mr. Hunter that he may be entitled to corrective action under the Federal Erroneous Retirement Coverage Correction Act (FERCCA). FHWA advised Mr. Hunter that FERCCA provided him the option of choosing retirement coverage under either the CSRS Offset program or under FERS. Mr. Hunter was provided with information concerning the two options, and was advised that he had six months in which to make his election, and that if

he made no election he would be automatically placed under the CSRS Offset program. FHWA informed Mr. Hunter that if he elected the CSRS Offset program he would not be eligible to retire until a later date, and that he would be placed retroactively on leave without pay for the period of his FERS retirement and required to repay the FERS annuity payments he had erroneously received during this period. After discussing the financial implications with FHWA officials and seeking an extension of time to make an election, on March 26, 2007 Mr. Hunter cancelled his FERS retirement and chose the CSRS Offset retirement coverage, agreeing also to return to employment with FHWA. As a result of Mr. Hunter's election, his FERS annuity was cancelled on April 1, 2007, retroactive to August 1, 2005.

On August 21, 2007, OPM informed Mr. Hunter that, as a result of the cancellation of his annuity under FERS, he had been overpaid $11,969.96 in annuity benefits for the period from August 1, 2005 to December 31, 2006, which he was required to repay. This amount did not include three monthly annuity payments for the period January 1, 2007 through March 30, 2007 that OPM had attempted to make by direct deposit to Mr. Hunter's bank, because these three payments had been returned to OPM by his bank. Mr. Hunter states, and it is not disputed, that these three deposits were never made because incorrect account or routing numbers were used for the direct deposits. OPM's overpayment calculation also excluded amounts the government had deducted from Mr. Hunter's FERS annuity to pay Federal Employee Health Benefits (FEHB) insurance premiums. Mr. Hunter states that his FEHB coverage was cancelled retroactively along with his FERS annuity, that OPM was able to recover these insurance premium payments from the insurance carrier, and that these payments should be returned to him.

After reconsideration, on October 31, 2007 OPM issued a final ruling that Mr. Hunter had been overpaid, and that he was not entitled to a waiver of recovery of the overpayment because when he made his CSRS Offset program election, he was on notice that OPM would recover the annuity payments he had received under the FERS program, and he was therefore not without fault in causing the overpayment. The deciding official stated: "We find that waiver is precluded in this case because when you received your FERCCA Election Summary, you were provided with information, and made aware that an overpayment would need to be recovered if you elected CSRS Offset." OPM required return of $11,969.96, which Mr. Hunter repaid; he then appealed to the MSPB.

By statute, OPM may not recover FERS annuity overpayments when the recipient was without fault and recovery would be against equity and good conscience. 5 U.S.C. §8370(b); see also 5 C.F.R. §845.301. OPM regulations provide that recovery is against equity and good conscience when: "(a) It would cause financial hardship to the person from whom it is sought; (b) The recipient of the overpayment can show (regardless of his or her financial circumstances) that due to the notice that such payment would be made or because of the incorrect payment he or she either has relinquished a valuable right or has changed positions for the worse; or (c) Recovery would be unconscionable under the circumstances." 5 C.F.R. §845.303.

On March 14, 2008 the MSPB's administrative judge (AJ) confirmed the assessed overpayment, discussing various actions of OPM and the arguments of both sides. The AJ reversed OPM's finding Mr. Hunter was not without fault, noting that OPM's finding was in conflict with OPM's own written policy guidelines regarding whether a recipient should be found without fault. However, the AJ found that Mr. Hunter had not established that

recovery of the overpayment would be "against equity and good conscience," observing that he did not claim financial hardship or unconscionability. The AJ also found that Mr. Hunter did not relinquish a valuable right by retiring from FHWA because that decision was not shown to be irrevocable, as required by Alexander v. OPM, 58 M.S.P.R. 358, 364-65 (1993), in light of Mr. Hunter's return to federal employment in May 2007. Thus the AJ held that Mr. Hunter failed to establish both of the statutory requirements for entitlement to a waiver or adjustment of recovery, and affirmed OPM's decision.

The full Board granted Mr. Hunter's petition for review. The Board found that Mr. Hunter's decision to retire in 2005 was directly caused by the erroneous notice that he was eligible to receive a FERS retirement annuity, and was detrimental to him because his continued employment would have allowed him to earn additional salary and retirement benefits. The Board concluded that the AJ erred in finding that the early retirement decision was reversible, because the two years of lost salary and credits during his erroneous early retirement were permanently lost. The Board thus reversed the AJ's finding that OPM's recovery of overpayments was not against equity and good conscience, and concluded that Mr. Hunter was entitled to waiver of recovery of the overpayments. The Board accordingly ordered OPM to refund the $11,969.96 Mr. Hunter had paid to OPM, which was the amount of overpayment he actually received. The Board referred to Mr. Hunter's argument that the overpaid amount was actually greater than $11,969.96 because of the FEHB insurance premiums that were deducted from his annuity payments, plus the three annuity payments from 2007 that were not credited to his bank account because of the erroneous account designations. The Board held that it need not consider whether the

overpayment was actually greater than $11,969.96, because OPM had not sought to recover more than that amount from Mr. Hunter.

Mr. Hunter appeals, arguing that the Board failed to take account of facts that showed that he should have been refunded $16,801.36, instead of the $11,969.96 that was assessed directly against him and that he had personally repaid to OPM.

DISCUSSION

Decisions of the MSPB are reviewed to determine whether they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. §7703(c); Cheeseman v. Office of Pers. Mgmt., 791 F.2d 138, 140 (Fed. Cir. 1986).

Mr. Hunter argues that the FEHB insurance premium payments made on his behalf, and the three months of additional annuity payments submitted to his bank by direct deposit and returned by the bank to OPM, were part of the total annuity payments during the period of OPM error, and thus should be included in the waiver of recovery awarded by the Board. These amounts indeed reflect part of the FERS retirement benefits that were erroneously afforded to Mr. Hunter, but they were not payments that he actually received. Mr. Hunter states that OPM sought recovery or actually recovered these amounts from other parties, but since they were paid on his behalf or should have been paid directly to him, they should be included in the amount whose recovery is deemed waived.

OPM responds that Mr. Hunter never had these monies, was not initially required to return them to OPM, and thus is not entitled to their payment upon waiver of OPM's right to recovery of the amounts it overpaid. OPM states that the waiver statute, 5 U.S.C.

§8470(b), only authorizes waiver of recovery of payments actually received by the annuitant, and that OPM's policy guidelines support this interpretation, for they state:

> Limitation. OPM may only waive amounts actually overpaid. The statutory waiver authority does not extend to providing relief—however equitable—in cases where no overpayment has been made. For example, there is no basis for using OPM's waiver authority to refund insurance premiums properly withheld from an individual's annuity payments. . . .

U.S. Office of Personnel Management, Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and the Federal Employees' Retirement System, §I.A.10 (May 1995) ("OPM's Policy Guidelines"). We agree that this Guideline supports OPM's position, at least with respect to the withheld insurance premiums. However, as Mr. Hunter points out, the OPM Policy Guidelines themselves state that they are "generally not hard-and-fast rules that are to be applied mechanically or mindlessly in all cases" and that "[e]ach overpayment case is unique with its own set of circumstances and equities. Reason and common sense should prevail over any particular guideline." Id. Preface.

Mr. Hunter argues that reason and common sense should intervene here, because when he elected the CSRS Offset program and retroactively lost his FERS benefits, he also retroactively lost FEHB coverage, which meant that he and his wife were required to reimburse his FEHB insurance carrier for all medical expenses it had paid on their behalf. He contends that it makes no difference that the government paid his FEHB premiums directly to the carrier, and argues that those payments should be construed as payments to him, for the purposes of the waiver of recovery statute. OPM does not state whether the insurance premiums were retroactively recovered from the FEHB carrier, as Mr. Hunter asserts, and the record does not reflect what medical insurance payments were made by

the carrier.  Mr. Hunter states that he was required to reimburse the carrier for all such expenditures.  The Board made no findings on this aspect, apparently deeming it irrelevant.

On the record and arguments presented, we do not discern reversible error in the Board's treatment of this argument, for the burden was on Mr. Hunter to show violation of equity and good conscience, and OPM's Policy Guidelines, cited supra, state that insurance premiums withheld from gross annuity payments are not considered "payments" subject to waiver of recovery.  The insurance premiums would not have been made directly to Mr. Hunter even had his FERS retirement annuity been proper.  We do not discern reversible error in the Board's treatment of this question.

Mr. Hunter's argument with respect to the three months of annuity payments that OPM sent to his bank for direct deposit, but that the bank returned to OPM because of incorrect account or routing numbers, presents a closer question.  The government does not dispute that the reason these three payments did not reach Mr. Hunter was because of incorrect information needed to access Mr. Hunter's account.  When OPM initially required Mr. Hunter to return all his FERS annuity payments, OPM did not include these amounts of attempted "deposits" because they had already been returned to OPM by his bank.  Mr. Hunter points out that the payments were designated for his account, and that if they had been correctly identified by OPM they would have been included in the money whose repayment was now waived.  He states that he was entitled to FERS annuity payments until his FERS annuity was cancelled retroactively; this did not occur until April 1, 2007.  He states that he would have received these payments before his election of the CSRS Offset program took effect, and cites section V.F.1 of the OPM Policy Guidelines, which states:

> Erroneous Collection.  Amounts recovered by OPM that are later found not to be owed to the fund should be promptly refunded.  In addition, if collection

through offset is inappropriately made before the debtor has exhausted his/her due process rights (i.e., before the waiver/reconsideration/appeal process has run its course), the amounts improperly collected should generally be promptly refunded.

Mr. Hunter contends that this provision requires that OPM refund these payments which were returned to OPM instead of deposited to his account.

OPM's position is that the three monthly payments that were returned to OPM by the bank were never part of OPM's overpayment claim, and thus that these payments are not involved in the issue of waiver. The Board apparently so believed, although it made no specific findings on this aspect. The cited portion of OPM's Policy Guidelines, section V.F.1, supra, relates to erroneous collection by OPM of amounts "later found not to be owed to the fund"; that condition apparently was viewed as not applying here because no FERS annuity should have been paid, and because these sums were not sought to be collected by OPM. The statutory waiver provision circumscribes OPM's recovery efforts, but does not provide a separate right to receive erroneous payments in the first instance. The issue before the Board was whether to waive the overpayment that was assessed by OPM, not whether other errors should also be corrected. On the entirety of the record presented, we conclude that equity and good conscience were adequately served.

We affirm the Board's conclusion that the amount to be returned to Mr. Hunter is limited to the amount that OPM had required him to repay, namely, $11,969.96. The decision of the MSPB is affirmed.

No costs.